THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| ATONIO SIVATIA, through his Guardian & Mother Nonnie L. Masaniai Pea, and NONNIE L. MASANIAI PEA,<br><br>                 Plaintiff,<br><br>v.<br><br>AMMON FOX, JAMES WILLIAMS, NICK GREEN, and CHAD FAUBION, West Valley City Police Officers; DOE DEPUTIES 1–10; and WEST VALLEY CITY, by and through its Police Department,<br><br>                 Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [48] DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:21-cv-00761-DBB-JCB<br><br>District Judge David Barlow |

Defendants Ammon Fox, James Williams, Nick Green, Chad Faubion, and West Valley City (collectively "Defendants") move for partial summary judgment on Plaintiffs Atonio Sivatia and Nonnie L. Masaniai Pea's (collectively Plaintiffs) state and federal constitutional claims.[1] For the following reasons, the court grants Defendants' motion in part and denies it in part.

## BACKGROUND

At approximately midnight on December 6, 2020, the West Valley City Police Department (the "Department") received multiple calls from an apartment complex located at 4000 South Redwood Road, West Valley City, Utah.[2] One caller reported that a man—Mr. Sivatia[3]—had been pounding on the caller's apartment door and window while screaming "Kill

---

[1] Defendants' Motion for Partial Summary Judgment ("Defs.' Mot."), ECF No. 48.
[2] Third Am. Compl. ¶ 17, ECF No. 31.
[3] *Id.* ¶ 19.

me," had broken his apartment window, and had proceeded through the apartment complex.[4]
Police dispatch put out a call for a "psychiatric" and described the first caller's report.[5] Officers
Fox and Faubion responded.[6] During this time, another caller reported that a man who was likely
having a "mental episode" was breaking windows and screaming, and was likely near the
complex's pool.[7] Dispatch communicated Mr. Sivatia's location to the responding officers.[8]
Officer Fox arrived, informed dispatch that he could hear the suspect, and stated that because the
suspect was intoxicated and belligerent, he was just going to keep an eye on him until a second
unit could arrive.[9] Officer Fox then informed dispatch that Mr. Sivatia was "going after a car that
[has] an occupant."[10] Throughout this period, several callers reported Mr. Sivatia's behavior.[11]

 Officer Fox made contact with Mr. Sivatia, informed him that he was a police officer, and
ordered him to get on the ground.[12] Mr. Sivatia walked away from Officer Fox.[13] Officer Fox
shouted: "You can't keep attacking people."[14] Mr. Sivatia then began to run from the apartment
complex toward Redwood Road, and Officer Fox slowly pursued him.[15] Officer Fox radioed that
Mr. Sivatia was not "moving too fast"; he then repeated his order to Mr. Sivatia to stop.[16] The
closer Mr. Sivatia got to Redwood Road, the more urgent Officer Fox's commands became.[17]

---

[4] WVC 000048, at 00:34–00:49, 01:24–01:30, ECF No. 49 Ex. 1.
[5] WVC 000047 ("Dispatch Recording"), at 01:07–01:40, ECF No. 59 Ex. B.
[6] *Id.* at 00:55–00:57, 1:51–1:56 (communicating with 811 and 270); Deputy Report for Incident 20I038009 ("Police Report") at 2, ECF No. 48-2.
[7] WVC 000049, at 00:15–00:28, 00:50–00:59, 01:24–01:29, ECF No. 49 Ex. 1.
[8] Dispatch Recording, at 01:51–01:56.
[9] *Id.* at 02:00–02:02, 02:43–02:49.
[10] *Id.* at 03:26–03:30; *see also* WVC 000053, at 00:30–00:36, ECF No. 49 Ex. 1.
[11] WVC 000050, at 00:24–00:31, 1:22–1:45, ECF No. 49 Ex. 1; WVC 000051, at 00:37–00:45, 01:01–01:13, ECF No. 49 Ex. 1; WVC 000052, at 00:26–00:30, 00:48–01:08, ECF No. 49 Ex. 1.
[12] WVC 000043 ("Officer Fox Body Cam Footage"), at 00:35–00:45, ECF No. 49 Ex. 3.
[13] *Id.* at 00:45–56.
[14] *Id.* at 00:46–00:49.
[15] Dispatch Recording, at 03:57–04:10; Officer Fox Body Cam Footage, at 01:01–01:30.
[16] Officer Fox Body Cam Footage, at 01:02–01:20.
[17] *See id.* at 01:18–01:30.

Mr. Sivatia ran into Redwood Road and narrowly avoided getting hit by southbound traffic.[18] He appears to have shouted "Kill me" again right before he entered the roadway.[19] Mr. Sivatia began running north, in the middle or leftmost lane of the southbound roadway; Officer Fox sprinted after Mr. Sivatia, again ordered Mr. Sivatia to "get on the ground now," and then when Mr. Sivatia did not comply, he tased Mr. Sivatia.[20]

Mr. Sivatia fell with his head pointed north, in the leftmost lane of the southbound roadway of Redwood Road.[21] Officer Fox warned Mr. Sivatia not to move, and warned that if he did, Officer Fox would "hit him again."[22] Officer Fox stood several feet behind Mr. Sivatia, and shined his flashlight at oncoming traffic, though he also used the hand holding his flashlight to activate his radio at several points, and in doing so, turned the flashlight away from oncoming traffic.[23] An oncoming car stopped in the lane of traffic that Mr. Sivatia and Officer Fox occupied with its hazard lights on, though other lanes of traffic continued to flow.[24] Officer Fox informed dispatch that he had "traffic stopped."[25] He then radioed dispatch and observed that Mr. Sivatia had intentionally sought to be hit by a car.[26] Officer Fox repeatedly warned Mr. Sivatia that he was not to move.[27] Officer Williams arrived in his vehicle and parked in the turn lane approximately 30 feet south of where Mr. Sivatia lay.[28] The car blocking traffic remained in place for roughly one minute and departed approximately as Officer Williams approached Mr.

---

[18] *See id.*, at 01:30–01:32; *see also* WVC 000054, at 00:35–01:00, ECF No. 49 Ex. 1.
[19] *See id.* 01:28–01:32.
[20] Officer Fox Body Cam Footage, at 01:34–01:38.
[21] *Id.* at 01:38–01:43.
[22] *Id.* at 01:43–01:53.
[23] *See id.* at 01:42–03:07.
[24] *See id.* at 01:42–02:10.
[25] *Id.* at 01:57–02:00.
[26] *Id.* at 01:54–02:11; Dispatch Recording, at 04:33–04:40.
[27] Officer Fox Body Cam Footage, at 02:12–02:14, 02:25–02:29, 02:45–02:48.
[28] WVC 000045 ("Officer Williams Body Cam Footage"), at 00:48, ECF No. 49 Ex. 4.

Sivatia from his vehicle.[29] At roughly the same time that the car that had been blocking traffic

left, Officer Fox was in the process of radioing dispatch for medical support, due to the blood on

Mr. Sivatia.[30] Officer Williams stood in the median lane, facing Mr. Sivatia.[31] Roughly 15

seconds after the car that was blocking the lane departed, another car ran over Mr. Sivatia and

clipped Officer Fox.[32] As the car reached approximately 10 feet from Mr. Sivatia, Officer Fox

yelled "Hey! No!" and after the car ran over Mr. Sivatia, Officer Fox screamed several

expletives.[33] Mr. Sivatia had been prone in Redwood Road for approximately 90 seconds in

total.[34] As a result of being run over, Mr. Sivatia suffered severe injuries.[35]

     Plaintiffs filed suit on December 28, 2021.[36] Their Third Amended Complaint alleges

seven claims: excessive force in violation of the Fourth Amendment against Officer Fox;

violation of Mr. Sivatia's state constitutional rights against Officers Fox and Williams; willful

misconduct in violation of Utah law against West Valley City; unlawful or deficient policies in

violation of 42 U.S.C. § 1983 against West Valley City; failure to train in violation of 42 U.S.C.

§ 1983 against West Valley City; state-created danger against West Valley City; and declaratory

and injunctive relief.[37] Defendants now move for summary judgment on only the first, second,

fourth, fifth, and seventh claims.[38] This matter was fully briefed on March 21, 2024.[39] Plaintiffs

---

[29] *See* Officer Fox Body Cam Footage, at 01:50–03:03; Officer Williams Body Cam Footage, at 00:54–01:00 (showing the car leaving).
[30] Officer Fox Body Cam Footage, at 02:50–02:57.
[31] *See* Officer Williams Body Cam Footage, at 00:55–01:14; Officer Fox Body Cam Footage, at 03:03–03:07.
[32] *See* Officer Fox Body Cam Footage, at 03:05–03:09; Police Report at 6.
[33] Officer Fox Body Cam Footage, at 03:08–03:11.
[34] *See id.* at 01:38–03:09.
[35] *See* WVFD Billing Report, ECF No. 58-2; Assessment Details, ECF No. 58-11.
[36] Compl., ECF No. 2.
[37] Am. Compl. ¶¶ 121–49.
[38] Defs.' Mot. 1.
[39] Opp'n to Defs.' Mot. for Partial Summ. J. ("Pls.' Opp'n"), ECF No. 58; Reply in Support of Defs.' Mot. for Partial Summ. J. ("Defs.' Reply"), ECF No. 69.

later filed an objection to new evidence Defendants submitted on reply.[40] Because none of that evidence would affect its analysis, the court does not consider either the belated evidence or the objections.

## STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[41] "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented."[42] When the moving party does not bear the ultimate burden of proof at trial, the moving party satisfies its initial burden by pointing out the lack of evidence to support the nonmoving party's case.[43] If the moving party carries its initial burden, the burden then shifts to the nonmoving party to demonstrate that there is a genuine dispute of material fact for trial.[44] Courts must "view the facts and draw reasonable inferences 'in the light most favorable'" to the non-moving party.[45]

## DISCUSSION

### I.    42 U.S.C. § 1983

"Every person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States or person within the jurisdiction thereof to the deprivation of any

---

[40] Obj. to New Evidence Submitted in Defs.' MSJ Reply Memo., ECF No. 72; Response in Opp'n to Pls.' Obj. to New Evidence Submitted in Defs.' Reply Memo., ECF No. 75.
[41] Fed. R. Civ. P. 56(a).
[42] *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020) (quoting *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015)).
[43] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).
[44] *See id.* at 324.
[45] *Scott v. Harris*, 550 U.S. 372, 379 (2007).

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]"[46] The Amended Complaint alleges three claims grounded in Section 1983: the first claim alleges excessive force under the Fourth Amendment against Officer Fox for his use of a taser[47]; the fourth claim alleges that the Department failed to create adequate policies and procedures for safe tasing and detention[48]; and the fifth claim alleges that the Department failed to train or supervise its officers in safe tasing and detention.[49]

The court begins with Plaintiffs' claim that Officer Fox violated Mr. Sivatia's Fourth Amendment rights by tasing him.

### A.    Excessive Force

Defendants argue that Officer Fox is entitled to qualified immunity for tasing Mr. Sivatia.[50] "To overcome a qualified immunity defense, the onus is on the plaintiff to demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."[51]

### 1.    Violation of Constitutional Right

When "the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment[.]"[52] The Fourth Amendment provides that "[t]he right of the people to be secure in

---

[46] 42 U.S.C. § 1983.
[47] Am. Compl. ¶¶ 121–51.
[48] *Id.* ¶¶ 203–15.
[49] *Id.* ¶¶ 216–26.
[50] Defs.' Mot. 6–9.
[51] *Est. of George v. City of Rifle*, 85 F.4th 1300, 1312 (10th Cir. 2023) (quoting *Surat v. Klamser*, 52 F.4th 1261, 1270–71 (10th Cir. 2022)).
[52] *Graham v. Connor*, 490 U.S. 386, 394 (1989).

their persons . . . against unreasonable searches and seizures, shall not be violated[.]"[53]
"Determining whether the force used to effect a particular seizure is 'reasonable' under the
Fourth Amendment requires a careful balancing of '"the nature and quality of the intrusion on
the individual's Fourth Amendment interests"' against the countervailing governmental interests
at stake."[54] "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the
question is whether the officers' actions are 'objectively reasonable' in light of the facts and
circumstances confronting them, without regard to their underlying intent or motivation."[55]
Factors courts should consider when weighing the parties' interests include "the severity of the
crime at issue, whether the suspect poses an immediate threat to the safety of the officers or
others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[56] The
second factor "is undoubtedly the 'most important'" factor.[57] However, "[t]he *Graham* factors
are nonexclusive and not dispositive; the inquiry remains focused on the totality of the
circumstances."[58] Finally, the "calculus of reasonableness must embody allowance for the fact
that police officers are often forced to make split-second judgments—in circumstances that are
tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular
situation."[59]

---

[53] U.S. Const. amend. IV.
[54] *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).
[55] *Id.* at 397.
[56] *Id.* at 396.
[57] *Flores v. Henderson*, 101 F.4th 1185, 1194 (10th Cir. 2024) (quoting *Pauly v. White*, 874 F.3d 1197, 1216 (10th Cir. 2017)).
[58] *Est. of George*, 85 F.4th at 1316 (quoting *Palacios v. Fortuna*, 61 F.4th 1248, 1256 (10th Cir. 2023)).
[59] *Graham*, 490 U.S. at 396-97.

*Severity of the Crime*

Defendants suggest that Mr. Sivatia was fleeing from the commission of an inherently violent crime, so Officer Fox was justified not only in tasing Mr. Sivatia, but would have been justified in using even deadly force.[60] In *Tennessee v. Garner*, the Supreme Court, applying the reasonableness test of the Fourth Amendment, held that the use of deadly force to apprehend a suspect was unreasonable "[w]here the suspect poses no immediate threat to the officer and no threat to others[.]"[61] Conversely, "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force."[62] Therefore, "if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given."[63] However, in *Scott v. Harris*, the Supreme Court noted "*Garner* did not establish a magical on/off switch" to be used exclusively in deadly force cases; instead, "*Garner* was simply an application of the Fourth Amendment's 'reasonableness' test."[64] Accordingly, the court has no reason to engage in a hypothetical whether Officer Fox would have been justified in using deadly force. Instead, the court applies the *Graham* factors and then considers the totality of the circumstances.

---

[60] Defs.' Mot. 7–9.
[61] 471 U.S. at 11.
[62] *Id.* at 11.
[63] *Id.* at 11–12.
[64] 550 U.S. at 382.

First, Defendants argue that Mr. Sivatia attempted to commit at least one serious crime (robbery),[65] while Plaintiffs argue that Mr. Sivatia was nonviolent and unarmed.[66] Indisputably, Mr. Sivatia was belligerent and caused some amount of property damage.[67] And he obviously scared a number of people in his vicinity.[68] But Defendants' suggestion that Officer Fox had probable cause to believe that Mr. Sivatia attempted to commit a robbery is not sufficiently supported.[69] Under Utah law, robbery is the unlawful and intentional taking or attempted taking of property from a victim's person against their will by means of force or fear "with a purpose or intent to deprive" the victim of their property.[70] Robbery is a second-degree felony under Utah law, and therefore is a serious crime.[71] The record shows that after Officer Fox arrived at the apartment complex, he radioed to dispatch that Mr. Sivatia was "going after a car that [has] an occupant."[72] Additionally, Officer Fox already knew that Mr. Sivatia had been shouting things like "Kill me" and banging on apartment doors, and had broken an apartment's window.[73] But drawing reasonable inferences in Mr. Sivatia's favor, Officer Fox's statement that Mr. Sivatia was "going after" an occupied car is insufficient to show for summary judgment purposes that Officer Fox had probable cause to believe that Mr. Sivatia was acting with the intent of stealing the car.

---

[65] Defs.' Mot. 8–9.

[66] Pls.' Opp'n 23.

[67] *See* sources cited *supra* notes 4, 7, 11 and accompanying text.

[68] *See* sources cited *supra* notes 4, 7, 11.

[69] Because the inquiry hinges on what an officer in Officer Fox's position had probable cause to suspect, *see, e.g.*, *Pauly*, 874 F.3d at 1215, Defendants' arguments that point to information uncovered by Officer Christiansen after Mr. Sivatia had already been tased is not material, *see* Defs.' Mot. 3, 8.

[70] Utah Code § 76-6-301(2)(a).

[71] *Id.* § 76-6-301(3); *see also Ryder v. City of Topeka*, 814 F.2d 1412, 1419–20 (10th Cir. 1987).

[72] Dispatch Recording, at 03:26–03:30; *see also* WVC 000053, at 00:30–00:36. Notably, there is no body cam footage from Officer Fox's perspective to show what he might have been witnessing when he made this statement.

[73] *See* Dispatch Recording, at 01:14–01:25.

Later, as Mr. Sivatia began to walk away from Officer Fox, Officer Fox shouted "You can't keep attacking people."[74] While this statement suggests that Officer Fox believed that Mr. Sivatia was a danger to others, again drawing reasonable inferences in Mr. Sivatia's favor, that statement alone does not establish that Officer Fox had probable cause to suspect that Mr. Sivatia had committed or would imminently commit a serious violent crime.[75] Instead, the record, when viewed in the light most favorable to the non-moving party, establishes only that Officer Fox had probable cause, based on his observations and the 911 calls, to suspect that Mr. Sivatia had committed any number of minor crimes.[76] Defendants have not shown that this factor weighs in Officer Fox's favor, as they have not identified any serious crime for which Officer Fox had probable cause to believe Mr. Sivatia committed. A reasonable jury would not be compelled to find in Defendants' favor on this factor.

*Degree of Threat*

Turning then to the second *Graham* factor—whether the suspect was a threat—the Tenth Circuit has instructed that courts should consider a handful of factors: "(1) whether the officer ordered the suspect to drop his weapon . . . ; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect."[77] The second *Graham* factor is evaluated "at the precise moment [officers] used force."[78] As Mr. Sivatia was unarmed, the first two factors are

---

[74] Officer Fox Body Cam Footage, at 00:46–00:49.
[75] For instance, assault is a misdemeanor under Utah law. Utah Code § 76-5-012(3).
[76] *E.g.*, Utah Code § 76-6-106(2)(a)(i), (3)(a) (criminal mischief); *id.* § 76-6-106.1(2)(b), (b)(iii)–(iv) (property damage of less than $1500 in value); *id.* § 76-9-102(2)(b), (4) (disorderly conduct).
[77] *Est. of Coale v. Frost*, 967 F.3d 978, 985 (10th Cir. 2020) (quoting *Est. of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008)).
[78] *Emmett v. Armstrong*, 973 F.3d 1127, 1136 (10th Cir. 2020) (quoting *Pauly*, 874 F.3d at 1219).

inapposite. Mr. Sivatia was fleeing from Officer Fox, and Officer Fox's body cam footage suggests that he was roughly 10 feet behind Mr. Sivatia at the time he used his taser.[79] Accordingly, Mr. Sivatia was not an immediate threat to Officer Fox at the time Officer Fox deployed his taser. However, Mr. Sivatia ran into a dark, busy roadway. This conduct would plainly pose significant risk to drivers, especially as Mr. Sivatia had begun to run against traffic and did not appear to simply be trying to cross the road. Additionally, given that Mr. Sivatia had previously yelled "Kill me!" a reasonable officer would conclude that Mr. Sivatia might be seeking to commit suicide by running into the major roadway. Accordingly, the court finds that this factor weighs strongly in favor of Officer Fox.

*Evading Arrest by Flight*

Third, there is no question that Mr. Sivatia was fleeing from Officer Fox and was trying to evade arrest at the time Officer Fox deployed his taser. Therefore, this factor weighs in favor of Officer Fox.

*Totality of the Circumstances*

Before he tased him, Officer Fox knew that Mr. Sivatia had been acting belligerently and aggressively toward members of the public, had potentially destroyed property, was in psychological distress, and was potentially suicidal. He personally observed Mr. Sivatia pounding on an occupied car. Officer Fox followed Mr. Sivatia onto a main thoroughfare at approximately midnight, observed him nearly get hit by oncoming traffic, and observed him begin to run north—against traffic. Under these circumstances, while Officer Fox likely did not have probable cause to suspect Mr. Sivatia already had committed a serious crime, he knew Mr.

---

[79] *See* Officer Fox Body Cam Footage, at 01:34–01:38.

Sivatia was fleeing arrest, had strong reason to believe he was suicidal, and it was obvious he was a danger to motorists on the major roadway. This danger to the public was not inchoate or hypothetical—Mr. Sivatia nearly caused a high-speed collision right after he entered the road and was running into oncoming traffic when he was tased.

One final factor bears discussion: the level of force used by Officer Fox. Tasers can cause "temporary paralysis and excruciating pain."[80] And although they do not constitute deadly force, their intrusion into a suspect's protected Fourth Amendment interests can be "quite severe."[81] In addition, the context of the use of force is relevant. Plaintiffs emphasize that Officer Fox tased Mr. Sivatia in the middle of a busy road at midnight.[82] As noted above, Plaintiffs admit that Mr. Sivatia ran into traffic on a major road. As a result, Officer Fox's taser deployment caused a greater danger to Mr. Sivatia than tasing him elsewhere may have. But Mr. Sivatia's flight against traffic on that road also caused a much greater danger to others than moments before when he was running in the parking lot. In other words, Officer Fox tased Mr. Sivatia immediately after it became likely that he would cause a collision with unsuspecting motorists on a major roadway.

Considering the totality, from the perspective of a reasonable officer on the scene, and avoiding "the 20/20 vision of hindsight,"[83] Officer Fox acted reasonably in tasing Mr. Sivatia. While Mr. Sivatia's completed or attempted crimes likely were minor, Mr. Sivatia was fleeing arrest in a manner that posed a significant and imminent risk to the public. It was not unreasonable to seize Mr. Sivatia with a taser in order to prevent him from purposefully jumping

---

[80] *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 665 (10th Cir. 2010).
[81] *Id.*
[82] *See* Pls.' Opp'n 23.
[83] *Kisela v. Hughes*, 584 U.S. 100, 103 (2018) (quoting *Graham*, 490 U.S. at 396).

in front of traffic and thereby potentially seriously injuring both one or more motorists and himself. Therefore, Officer Fox did not violate the Fourth Amendment when he tased Mr. Sivatia.

### 2.   Clearly Established

"To be clearly established, ordinarily there must be prior Supreme Court or Tenth Circuit precedent, 'or the weight of authority from other circuits,' that would have put an objective officer in [Officer Fox's] position on notice that he was violating [Mr. Sivatia's] Fourth Amendment rights."[84] "This requires a high 'degree of specificity.'"[85] "While there does not have to be 'a case directly on point,' existing precedent must place the lawfulness of the particular [seizure] 'beyond debate.'"[86]

Plaintiffs argue that Tenth Circuit precedent establishes that an officer cannot tase "a nonviolent misdemeanant who did not pose a threat and was not resisting or evading arrest without first giving a warning."[87] Indeed, that statement of the law is correct. But it does not accurately describe the record evidence here. Mr. Sivatia was plainly evading arrest, had menaced members of the public, and his decision to run onto a major road created significant danger to motorists. So, the legal precedent described by Plaintiffs is not apposite. Put differently, that authority certainly did not make it "sufficiently clear that every reasonable official would understand that what he is doing is unlawful."[88]

---

[84] *Emmett*, 973 F.3d at 1137 (quoting *Est. of Ceballos v. Husk*, 919 F.3d 1204, 1213 (10th Cir. 2019)).
[85] *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).
[86] *Id.* at 64 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).
[87] Pls.' Opp'n 24 (quoting *Cavanaugh*, 625 F.3d at 667).
[88] *al-Kidd*, 563 U.S. at 735.

Instead, the question here is whether precedent clearly establishes that officers act unreasonably under the Fourth Amendment by tasing a fleeing misdemeanor suspect in a manner that increases the danger to that suspect when the suspect is creating a significant risk of injury to others. Plaintiffs point to a handful of out-of-circuit cases that suggest that tasing a fleeing suspect is excessive when it involves obvious risks beyond the shock itself.[89] This small number of cases do not approach the required "weight of authority." In any event, those cases largely focus on the risks of tasing a suspect who is "positioned on an elevated surface," who, when tased, is at "a risk of serious injury or death."[90] None of those cases involve a suspect fleeing across a busy roadway. And the more closely related cases have not found the use of force to be excessive.[91] The differences between tasing a suspect who is on an elevated surface and this case are twofold. First, Mr. Sivatia posed a risk to others by running up a dark, busy street, while a suspect who is simply on an elevated surface does not. Second, officers who tase a suspect on an elevated surface do not have a meaningful opportunity to prevent serious harm to the suspect, whereas here, Officer Fox had an opportunity to either block traffic or move Mr. Sivatia. Put another way, unlike the facts of this case, tasing a suspect who is on an elevated surface poses a much more certain risk to the suspect, and there is little danger to others in letting the suspect stay there.

---

[89] Pls.' Opp'n 25–26 (citing *Martin v. City of Reading*, 118 F.Supp.3d 751 (E.D. Pa. 2015); *Landis v. Baker*, 297 F. App'x 453 (6th Cir. 2008); *Negron v. City of New York*, 976 F.Supp.2d 360 (E.D.N.Y. 2013); *Peroza-Benitez v. Smith*, 994 F.3d 157 (3d Cir. 2021); *Patrick v. Moorman*, 536 F. App'x 255 (3d Cir. 2013)).

[90] *See Peroza-Benitez*, 994 F.3d at 167 (compiling cases).

[91] *Cf. Williams v. Sandel*, 433 F. App'x 353, 362 (6th Cir. 2011) (holding officers' use of baton strikes, pepper spray, and tasers was not unreasonable when attempting to secure a non-compliant misdemeanor suspect along a busy roadway); *Mecham v. Frazier*, 500 F.3d 1200, 1205 (10th Cir. 2007) (holding officers' use of pepper spray to remove a non-compliant suspect from her car was reasonable where "[t]he encounter played out on the narrow shoulder of a busy interstate highway").

Plaintiffs have not presented sufficient authority to show that "every reasonable officer would know" that Officer Fox's use of force was excessive under clearly established law. Accordingly, Officer Fox is entitled to qualified immunity for tasing Mr. Sivatia.[92]

## B.   Municipal Liability

Municipal liability for a Section 1983 violation is governed by the framework set forth in *Monell v. Department of Social Services*.[93] There, the Supreme Court recognized that municipalities are "persons" under Section 1983, and as such may be directly liable for damages.[94] The Court, however, stressed that "a municipality cannot be held liable *solely* because it employs a tortfeasor . . . on a *respondeat superior* theory."[95] Instead, in order to establish municipal liability under Section 1983, a plaintiff must demonstrate "that 'action pursuant to official municipal policy' caused their injury."[96] In addition to the requisite constitutional violation, Plaintiffs must prove the following elements: (1) official policy or custom, (2) causation, and (3) state of mind."[97]

---

[92] In their opposition, Plaintiffs argue that even if Officer Fox acted reasonably in tasing Mr. Sivatia, the special relationship and danger creation doctrines required that he move Mr. Sivatia from the roadway or otherwise protect him. *See* Pls.' Opp'n 27–30. But these doctrines are not relevant to the Fourth Amendment; instead, they are Fourteenth Amendment concepts, *see Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995), and similar doctrines are relevant in the Eighth Amendment context, *see DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 198–99 (1989) (duty to provide medical care to incarcerated or involuntarily committed individuals). And importantly, Defendants did not move for summary judgment on Plaintiffs' sixth claim, *see* Defs.' Mot. 1, which is titled "State Created Danger," and which cites *Uhlrig, see* Am. Compl. ¶¶ 227–43. Accordingly, the court does not address these doctrines here.
[93] 436 U.S. 658 (1978).
[94] *Id.* at 690, 693–95.
[95] *Id.* at 691; *accord Connick v. Thompson*, 563 U.S. 51, 60 (2011).
[96] *Connick*, 563 U.S. at 60 (quoting *Monell*, 463 U.S. at 691).
[97] *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).

15

### 1.    Constitutional Violation

Defendants argue that Mr. Sivatia suffered no violation of his constitutional rights.[98] To the extent that Plaintiffs' *Monell* claim is focused on the City's liability for Officer Fox's decision to tase Mr. Sivatia, Defendants are correct. But Plaintiffs' failure to train claim is also focused on officers' failure after tasing Mr. Sivatia to move him to a safe location or sufficiently block traffic in order to shield him.[99] Defendants have not made any argument to suggest that said conduct was not unconstitutional, under either the Fourth, Eighth, or Fourteenth Amendments. Accordingly, the court will treat this element as satisfied for purposes of this decision.

### 2.    Policy or Custom

A municipal policy or custom may take the form of

(1) "a formal regulation or policy statement"; (2) an informal custom "amount[ing] to a 'widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."[100]

In their Complaint, Plaintiffs assert two purported *Monell* claims. The first alleges that the City breached a duty to adopt policies related to the safe tasing and detention of suspects.[101] The second is based on a failure to train officers on proper tasing and detention procedures.[102] On this

---

[98] Defs.' Mot. 17.
[99] Am. Compl. ¶¶ 205, 212, 221–22.
[100] *Bryson*, 627 F.3d at 788 (quoting *Bammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189–90 (10th Cir. 2010)).
[101] Am. Compl. ¶¶ 203–15.
[102] *See* Am. Compl. ¶¶ 216–26.

16

record, the claims merge. The alleged failure to adopt an adequate policy on tasing and detention goes to the failure to properly train officers; it does not present a separate and distinct basis for liability. Neither of the parties treat the two claims differently in their briefing. The analysis in this case is the same for both, so they are addressed together.

In order to establish a policy or custom of failing to train, "the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."[103] Thus, a plaintiff "must identify a specific deficiency" in the municipality's training program.[104]

Here, Plaintiffs have not done so. In their opposition, Plaintiffs do not analyze the Department's training on safe detention practices, much less identify the required specific deficiency.[105] Instead, Plaintiffs argue that Defendants have not proven that they have sufficient taser policies and training. As discussed earlier, Officer Fox did not violate Mr. Sivatia's constitutional rights when he tased Mr. Sivatia, so any purported deficiency in taser training cannot form the basis of a failure to train claim. Instead, Plaintiffs must point to evidence of a specific deficiency in the City's training program on safe detention procedures, particularly those involving roadway detentions. And they make no such showing. Instead, they contend that "no specialized training" was needed and that the risk was known by Officers Fox and Williams

---

[103] *City of Canton v. Harris*, 489 U.S. 378, 390–91 (1989).
[104] *Keith v. Koerner*, 843 F.3d 833, 839 (10th Cir. 2016).
[105] *Cf.* Pls.' Opp'n 35–38.

"who have been trained about directing and blocking."[106] For all of these reasons, the *Monell* claims fail at the policy or custom step.

### 3.    Causation

"To establish the causation element, the challenged policy or practice must be 'closely related to the violation of the plaintiff's federally protected right.' This requirement is satisfied if the plaintiff shows that "the municipality was the 'moving force" behind the injury alleged.'"[107] The Supreme Court has repeatedly emphasized that the causation element is particularly important in failure to train cases.[108] It must be applied with "especial rigor." While Defendants reference this element,[109] neither party sufficiently engages with it. Because Plaintiffs fail to even identify any training deficiency, the court need not go any further than the parties' briefing.

### 4.    Mental State

Finally, "the inadequacy of police training may serve as the basis for [*Monell*] liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact."[110] "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[111] It requires notice that the municipality's actions or failures are "substantially certain to result in a constitutional violation" while the municipality "consciously or deliberately

---

[106] *Id.* at 1, 29.

[107] *Schneider*, 717 F.3d at 770 (citations omitted) (quoting Schwartz, § 7.12[B]; *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).

[108] *E.g.*, *City of Canton*, 489 U.S. at 391–92; *Brown*, 520 U.S. at 405 ("Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.").

[109] *See* Defs.' Mot. 17; Defs.' Reply 37 ("None of the . . . policies Plaintiffs cite have any causal connection to *how* [Mr.] Sivatia was injured.").

[110] *City of Canton*, 489 U.S. at 388; *accord Connick*, 563 U.S. at 61.

[111] *Connick*, 563 U.S. at 61.

18

chooses to disregard the risk of harm."[112] Again, while Defendants cite this element,[113] neither party adequately engages with it. But again, because Plaintiffs have not carried their burden regarding a training deficiency, no further analysis is required.

In summary, Plaintiffs' *Monell* claim fails at the first step because they fail to identify any specific deficiency in the municipality's training that caused Plaintiffs' injury. The parties generally fail to meaningfully engage with much of the *Monell* framework. Plaintiffs in particular do not engage with the *Monell* framework in any substantial way, nor do they cite *any* caselaw in the section of their brief focused on these claims, save for a generalized citation to *Monell*.[114] By failing to provide any evidence of a relevant training deficiency, Plaintiffs have failed to carry their burden in resisting summary judgment on their fourth and fifth claims.

## II.   State Constitutional Claims

Plaintiffs' second cause of action is in reality three separate state constitutional claims against Officers Fox and Williams in their individual capacities: violation of Mr. Sivatia's right to due process of law, his right as an arrestee to be free of unnecessary rigor, and his right to be free of unreasonable seizure.[115] These claims are predicated on both Officer Fox's use of a taser to seize Mr. Sivatia and Officer Fox's and Officer Williams's post-arrest conduct.[116]

Utah does not have a statutory provision similar to Section 1983.[117] Instead, it utilizes a common law scheme to provide a damages remedy for violation of self-executing state

---

[112] *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (internal citations and quotations omitted).
[113] *See* Defs.' Mot. 17
[114] *Cf.* Pls.' Opp'n 35–38.
[115] *See* Am. Compl. ¶¶ 152–85.
[116] *Id.*
[117] *See Spackman ex rel. Spackman v. Bd. of Educ.*, 2000 UT 87, ¶ 20, 16 P.3d 533.

constitutional provisions.[118] The Utah Supreme Court has held that each of the three provisions

at issue are self-executing.[119] In *Spackman ex. rel  Spackman*, the Utah Supreme Court held that

such a claim requires proof of three elements: (1) "a plaintiff must establish that he or she

suffered a 'flagrant' violation of his or her constitutional rights"; (2) "a plaintiff must establish

that existing remedies do not redress his or her injuries"; and (3) "a plaintiff must establish that

equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's

right or redress his or her injuries."[120] Defendants argue that with respect to the three state

constitutional provisions at issue, the first two elements are lacking.[121]

### A.   Unnecessary Rigor

Article I, § 9 of the Utah Constitution provides that "[p]ersons arrested or imprisoned

shall not be treated with unnecessary rigor."[122] The unnecessary rigor clause "has no federal

counterpart[.]"[123] "The unnecessary rigor clause . . . protects persons arrested or imprisoned from

the imposition on them during their confinement that demand more of the prisoner than society is

entitled to require. The restriction on unnecessary rigor is focused on the circumstances and

nature of the process and conditions of confinement."[124] Thus, "[an arrestee] suffers from

unnecessary rigor when subject to an unreasonably harsh, strict, or severe treatment. This may

include being unnecessarily exposed to an increased risk of serious harm."[125]

---

[118] *Id.*
[119] *See Bott v. DeLand*, 922 P.2d 732, 737 (Utah 1996), *abrogated on other grounds by Spackman*, 2000 UT 87, ¶ 20 (holding Article I, § 9 is self-effectuating); *Spackman*, 2000 UT 87, ¶ 18 (holding Article I, § 7 self-effectuating); *Jensen ex rel. Jensen v. Cunningham*, 2011 UT 17, ¶ 63, 250 P.3d 465 (holding Article I, § 14 is self-effectuating).
[120] *Id.* ¶¶ 23–25.
[121] Defs.' Mot. 9–16.
[122] Utah Const. Art I, § 9.
[123] *Dexter v. Bosko*, 2008 UT 29, ¶ 7, 184 P.3d 592.
[124] *Id.* ¶ 17.
[125] *Id.* ¶ 19.

Defendants first argue that Officer Fox's tasing of Mr. Sivatia cannot form the basis of an unnecessary rigor claim because it was pre-arrest conduct.[126] Plaintiffs make no response to this argument.[127] While Defendants do not cite any apposite caselaw for the proposition that an officer's conduct occurring in the course of an arrest is not covered by the unnecessary rigor clause,[128] the court finds that the manner and means of executing an arrest are most appropriately analyzed under Article I, § 14 of the Utah Constitution, which prohibits unreasonable seizures. The text of the unnecessary rigor clause confirms this understanding, as the term "arrested" suggests that an arrest has already been effectuated. Accordingly, Plaintiffs may not base an unnecessary rigor claim on Officer Fox's tasing of Mr. Sivatia.

Next, Defendants argue that Officers Fox and Williams did not expose Mr. Sivatia to a risk of serious harm by detaining him on Redwood Road.[129] In order to rise to the level of unnecessary rigor, conduct must be "'clearly excessive or deficient and unjustified'"; there must be "a substantial risk of serious injury for which there is no reasonable justification at the time."[130] Defendants argue that after tasing Mr. Sivatia, Officer Fox had no reasonable alternative but to shine a flashlight towards oncoming traffic to increase his visibility.[131] Likewise, Defendants argue that Officer Williams was justified in not blocking traffic with his

---

[126] Defs.' Mot. 12–13.
[127] *Cf.* Pls.' Opp'n 32–34.
[128] Defendants cite only an Eighth Circuit case discussing the Eighth Amendment. *See* Defs.' Mot. 12–13 (citing *Schoettle v. Jefferson Cnty.*, 788 F.3d 855, 861 n.4 (8th Cir. 2015)). But, the unnecessary rigor clause "has no federal counterpart[.]" *Dexter*, 2008 UT 29, ¶ 7. And Defendants have offered no persuasive reason for the court to interpret the unnecessary rigor clause in light of the Eighth Amendment. Accordingly, whatever the Eighth Amendment says about the distinction between pre-arrest and post-arrest treatment, the court declines to make the same distinctions here.
[129] Defs.' Mot. 13–16.
[130] *Dexter*, 2008 UT 29, ¶ 19 (quoting *Bott*, 922 P.2d at 741).
[131] Defs.' Mot. 14.

vehicle because a civilian vehicle had blocked the lane, and by the time the civilian vehicle left, Officer Williams had already exited his vehicle.[132]

Plainly, detaining a suspect in the middle of a dark and busy road exposes the suspect to a substantial risk of serious injury.[133] Thus, the only question is whether the officers had a reasonable justification. As to Officer Fox, the record is silent as to why he could not have handcuffed Mr. Sivatia and moved him from the road—either to the sidewalk or the median. A reasonable jury could conclude that simply shining a flashlight was clearly deficient, and that there was no reasonable justification for failing to move Mr. Sivatia or ensuring the civilian driver stayed put. And as to Officer Williams, a reasonable jury may decline to accept that a civilian car blocking the lane was a reasonable justification for not moving Mr. Sivatia or blocking the lane himself. Instead, a reasonable jury could conclude that Officer Williams should have moved his cruiser into a blocking position or talked with the civilian driver to ensure that the car stayed in place.

Third, Defendants argue that even assuming a violation, the violation was not sufficiently flagrant to rise to a damages claim.[134] Speaking generally, the Utah Supreme Court has held that a flagrant violation occurs when a defendant violates "'clearly established' constitutional rights 'of which a reasonable person would have known.'"[135] Defendants suggest that it was not clearly established law that detaining a suspect in the middle of a dark busy street violated the

---

[132] Defs.' Mot. 15.

[133] In a footnote, Defendants suggest that because Mr. Sivatia was attempting to commit suicide-by-car, "any attempt to attribute Plaintiffs' damages to Officer Fox is nonsensical." Defs.' Mot. 14 n.4. Defendants have not made any argument as to why this fact, even if true, should change the unnecessary rigor analysis.

[134] Defs.' Mot. 15–16.

[135] *Spackman*, 2000 UT 87, ¶ 23 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

unnecessary rigor clause.[136] The court need not reach that issue. The Utah Supreme Court has

held that "a flagrant violation of the unnecessary rigor clause has occurred whenever the

following two elements are established: First, the nature of the act presents an obvious and

known serious risk of harm to the arrested or imprisoned person; and second, knowing of that

risk, the official acts without other reasonable justification."[137] This conduct must be more than

merely negligent.[138] A reasonable jury could conclude that both elements are satisfied here.

Finally, Defendants argue that Mr. Sivatia has an adequate remedy under Section

1983.[139] In order to secure damages under *Spackman*, "a plaintiff must establish that existing

remedies do not redress his or her injuries."[140] Citing several decisions from this court,

Defendants observe that "numerous courts have held that where a plaintiffs' federal remedies

fully redress an alleged state constitutional violation, the state constitutional claims should be

dismissed."[141] However, each of the decisions Defendants cite allowed a Section 1983 claim to

move forward, whereas here the court has granted Defendants' motion for summary judgment on

Plaintiffs' Section 1983 claims. Therefore, Plaintiffs do not have an adequate remedy under

Section 1983.[142]

---

[136] Defs.' Mot. 15.
[137] *Dexter*, 2008 UT 29, ¶ 25; *accord Jensen ex rel. Jensen*, 2011 UT 17, ¶¶ 67. Defendants do not engage with these elements in either their motion or reply brief.
[138] *Dexter*, 2008 UT 29, ¶ 21.
[139] Defs.' Mot. 12, 16.
[140] *Spackman*, 2000 UT 87, ¶ 24.
[141] Defs.' Mot. 11 (citing *Hoggan v. Wasatch Cnty.*, No. 2:10-cv-01204, 2011 WL 3240510, at *2 (D. Utah July 28, 2011); *Cavanaugh v. Woods Cross City*, No. 1:08-cv-32, 2009 WL 4981591, at *6 (D. Utah Dec. 14, 2009); *Nielson v. City of S. Salt Lake*, No. 2:06-cv-335, 2009 WL 3562081, at *9 (D. Utah Oct. 22, 2009)).
[142] The court also observes that Defendants have not moved for summary judgment on several of Plaintiffs' claims. Accordingly, it does not reach whether any of those claims could give Plaintiffs an adequate remedy.

In sum, genuine disputes of fact preclude summary judgment on Plaintiffs' unnecessary rigor claim. A reasonable jury could conclude that Officers Fox and Williams violated Mr. Sivatia's right to be free from unnecessary rigor, and that such violation was flagrant.

### B.    Due Process

Article I, § 7 of the Utah Constitution provides that "[n]o person shall be deprived of life, liberty or property, without due process of law."[143] Defendants argue that whether Mr. Sivatia was deprived of his due process right hinges on whether he was subjected to unnecessary rigor.[144] Plaintiffs make no response to this argument.[145] Since neither Plaintiffs' Amended Complaint nor their briefing identifies a theory or caselaw suggesting how Mr. Sivatia's due process rights were violated by Officers Fox's and Williams's conduct, summary judgment on this claim is appropriate.

### C.    Unreasonable Seizure

Article I, § 14 of the Utah Constitution provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures shall not be violated."[146]

Defendants argue that Officer Fox did not commit a flagrant violation of Section 14 because he had probable cause to arrest Mr. Sivatia.[147] Plaintiffs make no response to this argument in their opposition.[148] The court need not reach this issue. The text of Article I, § 14 mirrors the text of the Fourth Amendment to the U.S. Constitution.[149] While the Utah Supreme

---

[143] Utah Const. Art. I, § 7.
[144] Defs.' Mot. 13.
[145] *Cf.* Pls.' Opp'n 34–35.
[146] Utah Const. Art I, § 14.
[147] Defs.' Mot. 10–11.
[148] *Cf.* Pls.' Opp'n 30–35.
[149] *State v. Evans*, 2021 UT 63, ¶ 24, 500 P.3d 811.

Court has indicated that courts should "give the Utah Constitution a different construction where doing so will more appropriately protect the rights of this state's citizens,"[150] it has also declined to reach the state constitutional issue where neither party "has argued for a separate analysis[.]"[151] That is the case here. Neither Plaintiffs nor Defendants suggest how Article I, § 14 differs from the Fourth Amendment on these facts. Accordingly, because the court has held that Officer Fox did not violate the Fourth Amendment by tasing Mr. Sivatia, the result is the same with respect to Section 14.

In sum, summary judgment is appropriate on Plaintiffs' state constitutional claims regarding their due process and unreasonable seizure theories. A genuine dispute of fact exists on Plaintiffs' claim under the unnecessary rigor clause.

### III.  Declaratory and Injunctive Relief

Plaintiffs' seventh claim seeks a permanent injunction and a declaration that Defendants violated Plaintiffs' constitutional rights.[152] Defendants suggest that Plaintiffs lack standing to pursue either remedy.[153] Plaintiffs do not address whether they seek injunctive relief, and instead argue only that declaratory judgment is appropriate regardless of whether Defendants have qualified immunity.[154]

First, Defendants are correct that Plaintiffs lack standing to pursue a claim for injunctive relief, as they cannot demonstrate a sufficiently likely future injury.[155] Next, seeking a declaration that a statute is unconstitutional is not sufficient under Article III, as any injury could

---

[150] *Jensen ex rel. Jensen*, 2011 UT 17, ¶ 98.
[151] *Evans*, 2021 UT 63, ¶ 24.
[152] Am. Compl. ¶¶ 244–49.
[153] Defs.' Mot. 19–20.
[154] Pls.' Opp'n 38–40.
[155] *See City of L.A. v. Lyons*, 461 U.S. 95, 105 (1983).

not be redressed.[156] It follows that the same is true for the allegedly unconstitutional conduct at issue here. Accordingly, Plaintiffs' seventh claim is dismissed.

---

[156] *California v. Texas*, 593 U.S. 659, 672–73 (2021).

**ORDER**

For the forgoing reasons, the court GRANTS IN PART and DENIES IN PART

Defendants' motion for partial summary judgment.[157] Defendants are entitled to summary

judgment on Plaintiffs' first, fourth, fifth, and seventh claims, as well as portions of Plaintiffs'

second claim. However, there are genuine disputes of material fact precluding summary

judgment on the portion of Plaintiffs' second claim related to unnecessary rigor under the Utah

Constitution.

Signed July 25, 2024.

BY THE COURT

David Barlow
United States District Judge

---

[157] ECF No. 48.

27