Mitchell A. Stephens (11775)
Justin L. James (15167)
Benton M. Eskelsen (18362)
JAMES DODGE RUSSELL & STEPHENS, P.C.
545 East 300 South
Salt Lake City, Utah 84102
Telephone: 801.363.6363
Email: mstephens@jdrslaw.com
       jjames@jdrslaw.com
       beskelsen@jdrslaw.com

*Counsel for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| ATONIO SIVATIA, through his Guardian & Mother Nonnie L. Masaniai Pea, and NONNIE L. MASANIAI PEA, <br><br> *Plaintiffs*, <br><br> v. <br><br> AMMON FOX, JAMES WILLIAMS, NICK GREEN, CHAD FAUBION, WEST VALLEY CITY and DOES 1-10., <br><br> *Defendants*. | **PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTION TO MAGISTRATE JUDGE'S MEMORANDUM DECISION AND ORDER DENYING SHORT FORM DISCOVERY MOTION FOR PROTECTIVE ORDER** <br><br> Case No. 2:21-cv-00761-DBB-JCB <br><br> Judge David Barlow <br><br> Magistrate Jarde C. Bennett |

Pursuant to FRCP 72(a) and DUCivR 72-2(b), Plaintiffs Atonio Sivatia ("Sivatia"), through his Guardian Nonnie L. Masaniai Pea, and Nonnie L. Masaniai Pea ("Nonnie") (collectively "Plaintiffs") respond to Defendants Ammon Fox's ("Fox"), James Williams's ("Williams"), Chad Faubion's ("Faubion"), and West Valley City's ("WVC") (Collectively "Defendants") Objection to Magistrate Judge's Memorandum Decision and Order Denying Short Form Discovery Motion for Protective Order (Dkt. 98) ("Objection").

## **INTRODUCTION**

On June 18, 2025, Plaintiffs sought leave to file an amended complaint. [*See* Dkt. 100]. As set forth herein, Plaintiffs strongly disagree with Defendants' current Objection. Nevertheless, Plaintiffs recognize the practical benefit of avoiding even any potential uncertainty about the scope of their allegations in this case. Accordingly, the motion to amend asks leave to "clarify th[e] factual allegations" to more expressly refer to "the entirety of the interaction" at issue in this case. [*See id.*]. Put simply, the motion to amend would moot the Objection. For the sake of efficiency, that motion should be decided first.

In any event, Defendants again fail to meet their burden for the protective order sought in their Short Form Discovery Motion for Protective Order (Dkt. 89) ("Motion"). Defendants always carried the burden of demonstrating the need for a protective order. *Leighr v. Beverly Enterprises-Kansas Inc.*, 164 F.R.D. 550, 551–52 (D. Kan. 1996). But the burden is substantially higher now because they object to Magistrate Judge Bennett's ruling. That ruling is reviewed under an extremely-deferential standard. *See* Fed. R. 72(a) ("clearly erroneous or is contrary to law"). Also known as the "dead fish standard," it requires more than showing the prior ruling was "probably wrong." *See In re Antrobus*, 563 F.3d 1092, 1098 n.2 (10th Cir. 2009). Instead, it must "strike [the court] with the force of a five-week old, unrefrigerated dead fish." *Id.*; *accord Parada v. Pennington*, 2023 WL 1785650, at *1 (D. Utah Feb. 6, 2023) (same). Defendants cannot meet that lofty standard. [*See, e.g.*, Objection (Dkt. 98) at 10-12 (using disputed facts to argue discovery has "little" relevance)].

**STATEMENT OF FACTS**

**I.      Case Background**

1.      On the night of December 5, 2020, Defendants responded to a call for psychiatric help. [Dkt. 60 (WVC0047) at 00:01].

2.      Thereafter, Fox tased Sivatia "in the middle of" the highway. [Dkt. 48-2 at Sivatia_0128]. "[H]e's, like, in the middle of the road." [Dkt. 48-3 at Sivatia_3357].

3.      Fox "warned Mr. Sivatia not to move, and warned that if he did, Officer Fox would 'hit him again.'" [Dkt. 76 at 3].

4.      Additional officers arrived on scene. However, none blocked Sivatia from oncoming, southbound traffic. For example, "Officer Williams arrived in his vehicle and parked in the turn lane approximately 30 feet south of where Mr. Sivatia lay." [*Id.*].

5.      Moreover, none of Defendants controlled traffic. Instead, a car "ran over Mr. Sivatia," [*Id.* at 4] as the body camera identified in the Complaint shows:



6.      Two officers "pushed on the front bumper" as another "reversed in order to get the car off" – "while blood pooled under the vehicle." [Dkt. 31 at ¶ 95].

7. After the car was off, two of the defendants "traded off performing CPR" before allowing the driver to "perform CPR." [*Id.* at ¶¶ 96-97].

8. Minutes later, however, Defendants stopped performing CPR or other emergency aid. Instead, they stood around discussing what happened during the accident instead of helping Sivatia fight for his life. Again, the following image comes from the body camera footage identified in the Complaint:



9. Defendants openly discussed their lack of aid and the fact that they knew Sivatia was injured but alive: "Is he breathing? Yeah, he's active breathing . . . ." [Dkt. 49 at ~14:20; Dkt. 49 at ~6:45 ("He's breathing"); *id*. at ~6:52 ("He's breathing, dude"); *id*. at ~6:59 ("He's still with us right now.")]. Yet Defendants stopped providing medical care to Sivatia. They literally left him for dead. [*See id.*].

10. Plaintiffs filed suit. Their claims include; (1) violation of Utah Constitution Article 1, Section 9 – Unnecessary rigor [*see, e.g.*, Dkt. 31 at ¶ 159 (recognizing "unnecessary rigor is focused on the circumstances and nature of the process and conditions of confinement")]; (2) "Intentional, Grossly Negligent, and/or Willful Misconduct," that may fall outside of the

3

Governmental Immunity Act of Utah [*see id.* at ¶ 189 (quoting Utah Code § 63G-7-102)]; and (3) state created danger [*see id.* at ¶ 228 (quoting *Armijo v. Wagon Mound Public Schools*, 159 F.3d 1253, 1260 (10th Cir. 1998))]. [*See generally* Dkt. 76].

11.     The entire case arises from Sivatia's single interaction with Defendants – as generally shown by the 18-minute body camera footage identified in the Complaint.

## II.    The Discovery Dispute.

12.     In essence, Defendants' Objection asks the Court to limit this case to the first three minutes of the body camera footage. According to Defendants, all facts and events immediately after Sivatia was run over are so irrelevant that no discovery should be permitted. [Dkt. 98 at 11 ("To understand . . . relevance . . . it is necessary to discuss the facts following the accident."); *see also id.* at 11-13, n.45-54 (citing prior discovery addressing same issues)].

13.     On or around April 17, 2025, Plaintiffs served a Rule 30(b)(6) Notice of Deposition ("Notice").

14.     On May 2, 2025, Defendants filed the Motion requesting a protective order precluding Plaintiffs from requiring testimony on Topic Nos. 4(e-i), 6, 7, and 8 ("Contested Topics"), which partly concern the moments immediately after Sivatia was run over. [Dkt. 89 at Ex. A].

15.     Briefing was limited to 500 words. *See* DUCivR 37-1. However, the Court held in-person oral argument on May 15, 2025. [Dkt. 97 (recognizing same)]. Defendants did not attach a transcript from that hearing to their Objection. *Cf. DIRECTV, Inc. v. Turner*, 249 F.Appx. 27, 29 (10th 2007) ("[W]e cannot address this issue because he has not included a trial transcript in the record on appeal."); 4 C.J.S. Appeal and Error § 628 ("Where no transcript is provided, any ambiguity that could be resolved by a transcript will be resolved against the appellant."). !

16. On May 19, 2025, the Magistrate Judge issued an order denying Plaintiff's Motion (Dkt. 97) ("Order"). Defendants' Objection followed.

## ARGUMENT

### I. The Discovery is Relevant to the Claims and Defenses.

The scope of discovery for Rule 30(b)(6) depositions is the same as the scope of discovery under Rule 26(b). *Pflughoeft v. Kansas & Oklahoma R.R., L.L.C.*, No. 22-1177-TC-RES, 2023 WL 5672202, at *5 (D. Kan. Sept. 1, 2023). All the Contested Topics relate to West Valley's Police Department's ("WVPD") policies and/or Defendants' actions before, during, or after the moment Sivatia was crushed by a vehicle while in Defendants' custody. While many of the policies described in the Contested Topics have been provided to Defendants, "it is not uncommon for counsel to question deponents about documents produced through discovery." *Id*. at *14. Indeed, such topics are relevant and proportional in the context of a 30(b)(6) deposition regarding a plaintiff's injuries. *See Prescott v. Cracker Barrel Old Country Store, Inc.*, No. CIV-18-121-SLP, 2019 WL 11339874, at *4 (W.D. Okla. Feb. 5, 2019).

#### A. The Events Immediately After Sivatia's Injuries are Relevant.

Defendants' Objection unwittingly confirms why this case – which concerns a single police interaction – cannot be limited to the first three minutes of the body camera footage. To "understand . . . state of mind during the relevant period, ***it is necessary to discuss the facts following the accident***." [Dkt. 98 at 11 (emphasis added); *see also* Dkt. 31 at ¶ 187 (alleging Defendants acted "knowingly and intentionally"); Dkt. 36 at 7th Defense ("Defendants consistently acted in good faith, without malice, and their acts were justified . . . ."); *Id*. at 16th Defense (alleging "no malice," "reckless indifference or reckless disregard")].

5

Likewise, to assess Defendants' credibility, it is necessary to discuss what occurred immediately after Sivatia was hit by the car. For example, Defendants represent that they ignored Sivatia's obvious injuries "based on a mistaken medical judgment." [Dkt. 98 at 11]. However, the Fire Department arrived at approximately 12:08AM. [Dkt. 49 at ~9:55]. Thereafter, Defendants openly discussed that Sivatia was still breathing – and obviously alive. "Is he breathing?" [*Id.* at ~14:16]. "He has active breathing . . . ." [*Id.*]. Likewise, Defendants cite snippets of the deposition testimony, implicitly conceding that (a) this case always has addressed the entire interaction and (b) the importance of such discovery for both sides. Neither the Court nor the Plaintiffs should be limited to hearing Defendants' one-sided narrative. Indeed, it is telling that the Objection was filed *after* Officer Willams directly testified that he knew Sivatia was not dead, notwithstanding Defendants' current representations:

- Q. "***Did you think O.J. was dead at this point***?
  A. ***No, I did not***." See **Exhibit A (**Williams Dep.) at 107.

- Q. "***[T]he fire department told you he was an obvious echo***, correct?
  A. Yes.
  Q. Which was in contradiction to – which, in your words, means that he's dead, correct?
  A. Yes.
  Q. But ***that was in contradiction to what – your evaluations, correct?***
  A. ***What I believed, yes***." *Id.* at 150-51.

Moreover, footage shows that after Sivatia was struck by the vehicle that none of the officers could recall what happened during the accident - many of them mistaking where the car that struck Sivatia came from further speaking to credibility. [Dkt. 49 at ~11:15-11:42].

The Court should not splice and then quarantine the details of a single police interaction, especially for purposes of discovery. Instead, that interaction should be viewed as a whole. Said differently, although the analysis in the Order likely was too restrictive, the outcome was correct.

The Order correctly refused Defendants' Motion. Allowing Plaintiffs to ask Defendants about the entirety of their one, brief interaction with Sivatia does not smell like dead fish.

### B. Rule 26 Does not Redefine Relevancy or Impose Similar Strict Limits.

The Order relies on *Kennicott v. Sandia Corp.* to summarize the "undulating history" of Rule 26. However, that case expressly recognizes that the removal of several lines of Rule 26(b)(1) in the 2015 Amendment was *not* meant to be a substantive change. *See Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 468 (D.N.M. 2018).[1] *Kennicott* further states:

> when a party objects that discovery goes beyond that relevant to the claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is ***relevant to the subject matter of the action. This good-cause standard is intended to be flexible.***

*Id.* 468 (internal quotations omitted). *Kennicott* then quotes *In re Cooper Tire & Rubber Co.*, stating "the actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested." *Id.* at 468 (quoting *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180 (10th Cir. 2009)). "[D]iscovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir.

---

[1] Deleted text: "including the existence, description, nature, custody, condition and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(c)."

1995) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  And this Court has repeatedly confirmed this established rule, even after the 2015 amendment of Rule 26.[2]

The discovery at issue should be allowed because, as the Magistrate Judge ruled, it is relevant to the punitive damages issue.  But that is not all.  As described above, the discovery is also relevant to Defendants' mental state which is directly related to Defendants' Seventh[3], Eighth[4], Ninth[5], Tenth[6], and Sixteenth[7] Affirmative Defenses (Dkt. 36). It also goes to witness credibility.

The facts surrounding Defendants' treatment of Sivatia, the devices used during his treatment, and whether those acts and the use of those devices followed WVPD's policies are relevant to Defendants' state of mind. Plaintiffs understand that Defendants assert the medical care of Sivatia passed to the West Valley Fire Department upon their arrival. [Dkt. 98 at 12-13]. But Sivatia also remained in police custody. Furthermore, Defendant's written policies do not explain

---

[2] *See also The Sherwin-Williams Co. v. SUSE, LLC*, No. 2:15-CV-00129, 2016 WL 3212167, at *2 (D. Utah Mar. 22, 2016); *U.S. v. Talmage*, No. 1:16-CV-19-DN-PMW, 2017 WL 5075012, at *2 (D. Utah Apr. 27, 2017); *City of Orem v. Evanston Ins. Co.*, No. 2:16-CV-425-JNP-PMW, 2017 WL 2841219, at *2 (D. Utah July 3, 2017); *Dirtt Envtl. Sols., Inc. v. Henderson*, No. 1:19-CV-144 DPB, 2021 WL 276503, at *2 (D. Utah Jan. 27, 2021) ("The scope of discovery under Federal Rule 26(b) is broad at this stage of the case. As noted by the Supreme Court, "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues."); and *Adler v. All Hours Plumbing Drain Cleaning* 24-7-365, No. 2:21-CV-00141-DBP, 2022 WL 2867861, at *1 (D. Utah Mar. 22, 2022).
[3] "Defendants assert that they did not violate any clearly established, particularized, constitutional, statutory, or common-law rights or privileges. Defendants consistently acted in good faith, without malice, and their acts were justified and reasonable under the circumstances."
[4] "Plaintiffs' claims are barred by the public duty doctrine and the doctrines of Sovereign Immunity, Governmental Immunity, and Qualified Immunity."
[5] "Any constitutional violation that allegedly occurred was not the result of a deliberately indifferent custom, policy, or practice of Defendants."
[6] "Plaintiffs were not injured as a result of an injurious policy or custom of West Valley City."
[7] "Punitive damages are inappropriate in this case because Defendants did not act with actual malice and their actions/omissions were not done with reckless indifference or reckless disregard toward the rights or safety of others."

why Defendants accepted the incorrect designation the fire department gave – when they knew it was false. The Defendants knew he was alive and breathing, and one of them even gave Sivatia a "Delta" (alive) designation, moments after the fire department arrived.[8] As noted, Defendants also are shown and heard on camera discussing the fact that Sivatia was alive. Said differently, Defendants knew Sivatia was not dead and literally stood there, waiting for Sivatia – a person in police custody – to die. Certainly, WVPD's policies and whether they were followed are relevant not only to the issue of punitive damages. But their calloused conduct also goes to state of mind, credibility, and the claims/defenses listed in the footnotes above.

Ultimately, this case concerns a single police interaction with a single person on a single night. All the discovery is directed at understanding that single event. And Sivatia has no way to present the same facts at trial without such discovery because of the permanent disabilities he suffered. Thus, the Contested Topics are relevant and proportional. The Court should deny the Objection.

### II. The Court Did Not Err in its Decision to Deny the Motion.

"The party seeking [a protective order] has the burden to show valid grounds for it." *Leighr v. Beverly Enterprises-Kansas Inc.*, 164 F.R.D. 550, 551–52 (D. Kan. 1996) (internal quotations omitted). Both the Motion and Objection fail to meet this burden.

#### A. Defendants Offer Little to Demonstrate their Need for a Protective Order.

"If a party or deponent believes that a Rule 30(b)(6) topic is irrelevant or overly broad, the party/deponent has the burden to provide 'particular and specific facts' that show how providing testimony on that particular topic would be unduly burdensome, unduly expensive, embarrassing,

---

[8] A "Delta" Designation is one below severity of "Echo" and indicates that a suspect is still alive. *See* Green Deposition at 113-114, Wiliams Deposition at 108-109, Dkt. 49 at ~11:50-11:55 and Dkt.49 at ~10:00-10:12.

9

oppressive, or annoying." *Pflughoeft,* 2023 WL 5672202 at *13. "[T]he protective order must be necessary to protect the party from "annoyance, embarrassment, oppression or undue burden or expense." *Aikens v. Deluxe Fin. Services, Inc.*, 217 F.R.D. 533, 534 (D. Kan. 2003) (quoting FRCP 26(c)).

The Objection fails to show that the Magistrate Judge ignored "particular and specific facts" that established "valid grounds" for the requested protective order. Indeed, the Motion and the Objection offer nothing to demonstrate undue burden besides the fact that if the Contested Topics were allowed then Defendants would need to prepare 30(b)(6) deponents, something that Defendants must always do.[9] [Dkt. 98 at 12-13]. Such general complaints are certainly not "particular or specific" enough to show responding to them would be "unduly burdensome, unduly expensive, embarrassing, oppressive, or annoying." *Pflughoeft,* 2023 WL 5672202, at *13.

Moreover, Plaintiffs' should not be required to accept Defendants' self-serving, one-sided argument that it is the Police Department's policy for its officers to relinquish control over medical care to the medical professionals with the Fire Department as soon as the Fire Department arrives. [Dkt. 98 at p. 12 and 13.] Indeed, Plaintiffs may question Defendants' 30(b)(6) representative about documents produced in discovery and parties doing so is common practice. *See Pflughoeft,* 2023 WL 5672202, at *14; *see also Landry*, 323 F.R.D. at 400 ("[T]he mere fact that the matters regarding which discovery is sought happen to be within the knowledge of the moving party, is no objection to taking a deposition of the adverse party."). Plaintiffs should be allowed to ask about the written policies Defendants ignore now – and ignored on the night in question. They also

---

[9] "The need to adequately prepare a Rule 30(b)(6) designee does not, on its own, create undue burden for [Defendant]." *Erickson v. City of Lakewood*, No. 119CV02613PABNYW, 2021 WL 4947231, at *4 (D. Colo. Sept. 23, 2021) (internal quotations omitted). Indeed, "Rule 30(b)(6) is not otherwise limited, but unlimited…While counsel will have to carefully prepare the 30(b)(6) representative, they must always do so." *Landry*, 323 F.R.D. at 385 (D.N.M. 2018).

10

should be allowed to ask about constitutional and legal duties owed to Sivatia, regardless of whether the City's policies reflect those duties.

Defendants have not met their burden to justify this Court issuing a protective order regarding the Contested Topics.

### B. The Court Did Not Err When it Considered Punitive Damages.

Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate. *Bustos v. U.S.*, 257 F.R.D. 617, 621 (D. Colo. 2009). And Plaintiffs are aware of no Tenth Circuit law that states courts can only deny such orders based on arguments made by the non-movant. In fact, a court can deny a party's motion for a protective order even if the non-movant does not oppose it at all. *Gottstein v. Natl. Ass'n for the Self Employed*, 186 F.R.D. 654, 659 (D. Kan. 1999) ("Despite no opposition by plaintiffs, other than against paragraph ten, the court directs defendants to make the following modifications and submit the modified protective order for signature.")

Contrary to the Objection, this Court acted appropriately and within its discretion when it denied the Motion. Section III of the Objection argues that Plaintiffs waived arguments regarding punitive damages. But that section cites no case law that touches on discovery motions, protective orders, or the Court's broad discretion when ruling on such motions. [Dkt. 98 at pg. 14].[10] And

---

[10] No cases cited in the Objection at p. 14 discuss the appropriateness of this Court's consideration of arguments not raised in the Motion's briefings. *United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) (This case does not address the appropriateness of considering arguments outside the briefing in the context of a discovery motion, nor does it consider discovery motions at all.); *Adamscheck v. American Fam. Mut. Ins. Co.*, 818 F.3d 576, 587 (10th Cir. 2016) (This case discusses waiver of issue not included in appellate brief, not the context of a discovery motion); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (Another case discussing waiver of matters omitted on appeal, not discovery motions). The following cases all discuss summary judgment not discovery motions. *Cf.Advanced Concrete Tools, Inc. v. Beach*, 525 F. App'x 317, 320 (6th Cir. 2013) (); *Perkins Bd. of Educ.*, 708 F.3d 821, 829–32 (6th Cir. 2013);

11

"[t]he trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 34 (1984).

In any event, Defendants have not supported their waiver argument. Specifically, they have not attached a transcript of the extensive, in-person argument. Instead, they merely reference the truncated SODI briefing.[11] [Dkt. 98 at 13, n. 55]. That is not enough. *Cf. DIRECTV, Inc.*, 249 F.Appx. at 29 ("[W]e cannot address this issue because he has not included a trial transcript in the record on appeal."); 4 C.J.S. Appeal and Error § 628 ("Where no transcript is provided, any ambiguity that could be resolved by a transcript will be resolved against the appellant."). The Court should approach the Magistrate Judge's ruling with extreme deference, not unsubstantiated skepticism. Said differently, without a transcript of the extensive oral argument, the Court should assume the propriety of the existing ruling instead of assuming the Magistrate Judge "construct[ed] arguments or theories" sua sponte. [Dkt. 98 at 13-14].  !

### III.     Punitive Damages Are Available to Plaintiffs.

A significant portion of the Objection is dedicated to arguing that punitive damages are unavailable to Plaintiffs, essentially requesting the Court to grant summary judgment on Plaintiffs' claims for punitive damages. [Dkt. 98 at 7-9]. Yet, the Motion and Objection seek a protective order, not dispositive relief. Nor can a Magistrate Judge rule on dispositive motions. *Parson v. Farley*, 352 F. Supp. 3d 1141, 1145 (N.D. Okla. 2018) (citing 28 U.S.C. § 636 and *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461 (10th Cir. 1988)). Contrary to the Objection, at this

---

*Moton v. Cowart*, 631F.3d 1337, 1343 (11th Cir.2011) *Beaty v. United States*, 937 F.2d 288, 291 (6th Cir. 1991).

[11] If the Court now looks only to the 500-word briefs, then many of Defendants existing arguments also were waived. For example, Defendants (who carried the burden) did not argue that punitive damages are unavailable. That motion also did not detail any arguments concerning proportionality.

12

juncture, Plaintiffs need not even have established a prima facie case of punitive damages to seek related discovery. *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, 130 F.R.D. 149, 152 (D. Kan. 1990) ("To require a *prima facie* showing of entitlement to punitive damages at this time, before the completion of discovery, could also be quite difficult for the plaintiff and would not be logical since the very purpose of discovery is to locate evidence to support a punitive damages claim.").

The Objection relies on the Governmental Immunity Act of Utah ("GIAU") to argue punitive damages are unavailable to Plaintiffs. [Dkt. 98 at 7]. The Objection does so, despite the Complaint clearly naming "Defendants" in multiple allegations contained in the Third and Sixth Causes of Action, and despite the Complaint explaining why punitive damages are available regardless of the UGIA. [Dkt. 98 at 7; Dkt. 31 at ¶¶ 188-191 and ¶ 228]. Moreover, the Objection would have this Court determine a novel question of Utah Constitutional Law – whether punitive damages are available for Unnecessary Rigor claims under the Utah Constitution. [*See* Dkt. 98 at 7-10]. It does so, despite the Utah Supreme Court itself having **never** evaluated this issue. Nevertheless, the Objection asks this Court to decide that novel, state-law question via an objection to a discovery order on a discovery motion. And the unique legal question is not fully ripe; no punitive damages have been awarded. The Court should decline to issue novel, potentially advisory opinions about the Utah Constitution, particularly when presented via a 2-page argument in a discovery dispute.

That said, if the court were to evaluate this issue, it should rule in Plaintiffs' favor. "[T]o recover monetary damages for a violation of the Utah Constitution, a plaintiff must demonstrate that the provision violated by the defendant is self-executing and then must establish three elements: (1) the plaintiff "suffered a flagrant violation of his or her constitutional rights;" (2)

13

"existing remedies do not redress his or her injuries;" and (3) "equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries." *Jensen ex rel. Jensen v. Cunningham*, 250 P.3d 465, 478 (Utah 2011) (citing *Spackman ex rel. Spackman v. Bd. of Educ.*, 2000 UT 87, ¶¶ 18, 23–25, 16 P.3d 533.) Article 1, section 9 of the Utah Constitution is self-executing. *Id.* at 481.

Despite the claims made in Section I(B) of the Objection, *Spackman's* use of the term "redress" has no bearing on whether punitive damages are available to Plaintiffs. The *Spackman* framework, described above, is made up of factors courts use to determine whether monetary damages are available generally to a plaintiff. Indeed, *Spackman* never discusses or contemplates punitive damages. Nor did it discuss the appropriateness of such damages with claims for constitutional violations. In fact, **none** of the other cases cited in Section I(B) discuss punitive damages in the context of violations of the Utah Constitution. It is also disingenuous to represent that two cases decided almost fifty years apart, represent that "courts have uniformly treated [constitutional violations] as limited, compensatory actions." [*See* Dkt. 98 at 10.][12] While, *Spackman* does use the term "redress" when evaluating whether monetary damages are available for such claims, to extrapolate *Spackman*'s use of that term to disqualify punitive damages is inappropriate.

Thus, if no statute or case law has determined whether punitive damages are available for violation of Utah's constitution, then the common law applies "'In the absence of applicable constitutional or statutory authority' allowing damage claims under the Utah Constitution, 'Utah courts employ the common law.'" [Dkt. 98 at pg. 8 (citing *Spackman,* 2000 UT 87, ¶ 20, 16 P.3d

---

[12] *See Bowman v. Hayward*, 262 P.2d 957, 960 (Utah1953); *Ross v. Schackel*, 920 P.2d 1159, 1164 (Utah 1996).

at 533)]. In Utah, "[P]unitive damages may be awarded only if compensatory or general damages are awarded and it is established by clear and convincing evidence that the acts or omissions of the tortfeasor are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others." *See Diversified Holdings, L.C. v. Turner,* 63 P.3d 686, 699 (Utah 2002). In *Diversified*, it describes the trial court's jury awarding punitive damages for various common law claims. *Id.* at 694, 700, and 701.

In the present case, the similarities between the *Spackman* factors and Utah Code § 78B-8-201demonstrate how Article I, section 9 violations suggest punitive damages could be appropriate. Indeed, Utah Code Ann. § 78B-8-201 uses the phrase "conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others" while *Spackman* uses the phrase "flagrant violation of his or her constitutional rights." *Spackman,* 2000 UT 87, ¶ 23, 16 P.3d at 538. The similar language of these two phrases suggests that to a degree, the aims of the *Spackman* factors and Utah Code § 78B-8-201 are similar, not incompatible. That said, the Court does not need to rule on this complex issue, it just needs to decide whether the discovery contemplated in the Motion is relevant to punitive damages.

## **CONCLUSION**

Based on the foregoing, Plaintiffs request that the Court Deny Defendants' Objection.

DATED this 20th day of June, 2025.

                **James Dodge Russell & Stephens, P.C.**

                /s/  Benton M. Eskelsen
                Mitchell A. Stephens
                Justin L. James
                Benton M. Eskelsen

                *Attorneys for Plaintiffs*