THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| ATONIO SIVATIA, through his Guardian & Mother Nonnie L. Masaniai Pea, and NONNIE L. MASANIAI PEA,<br><br>Plaintiffs,<br><br>v.<br><br>AMMON FOX, JAMES WILLIAMS, NICK GREEN, and CHAD FAUBION, West Valley City Police Officers; DOE DEPUTIES 1-10; and WEST VALLEY CITY, by and through its Police Department,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION AND DISMISSING CASE**<br><br>Case No. 2:21-cv-00761-DBB-JCB<br><br>District Judge David Barlow |

On October 1, 2025, the court held a hearing where it asked the parties to address the court's subject matter jurisdiction over the remaining state-law claims.[1] The parties submitted their respective briefs on the matter on October 15, 2025.[2]

### BACKGROUND

This case involves the alleged conduct of West Valley police officers during Mr. Sivatia's 2020 arrest.[3] Mr. Sivatia was struck by a car while being forced to lie in the middle of a road after being tased by officers during his arrest.[4] His operative Complaint initially stated

---

[1] Minute Entry for Oct. 1, 2025 ("Hearing Minutes"), ECF No. 111.
[2] Defendants' Brief on the Existence of a Federal Question and Supplemental Jurisdiction ("Def. Brief"), ECF No. 112, filed Oct. 15, 2025; Memorandum Regarding Federal Subject Matter Jurisdiction ("Pl. Brief"), ECF No. 113, filed Oct. 15, 2025.
[3] *See generally* Third Amended Complaint ("Complaint") ECF No. 31, Filed Dec. 2, 2022.
[4] *Id.*

seven causes of action, including a mix of federal and state claims.[5] This court had subject matter jurisdiction over Mr. Sivatia's claims arising under the United States Constitution and federal statutes and supplemental jurisdiction over his related state law claims.[6]

Defendants moved for partial summary judgment on five of Mr. Sivatia's seven claims, including each claim that stated it was cognizable as a federal cause of action under 42 U.S.C. § 1983.[7] The court subsequently granted in part and denied in part the motion, dismissing four of the claims in their entirety and portions of another claim.[8] Following the court's order, Mr. Sivatia has three claims remaining: (1) a claim against Officers Fox and Williams as individuals based on their alleged violation of Section 9 (unnecessary rigor) of the Utah Constitution, (2) a gross negligence/willful misconduct claim against West Valley City ("West Valley"), and (3) a state-created danger claim against West Valley.[9]

On October 1, 2025, the court held a hearing where it asked the parties whether the case should be dismissed from federal court because only state-law claims remained.[10] At that hearing, Plaintiffs took the position that one of their remaining claims, the state-created danger claim, was a federal cause of action. The court ordered the parties to provide briefing about "(a) whether the sixth cause of action is sourced in federal or state law; and (b) if the court finds it is

---

[5] *Id.* at ¶¶ 121–249.
[6] *Id.* at ¶¶ 1–5.
[7] Defendants' Mot. for Partial Summary Judgment ("PMSJ"), ECF No. 48, filed Oct. 20, 2023.
[8] Order Granting in Part and Denying in Part Defendants' Mot. for Partial Summary Judgment ("PMSJ Order") 27, ECF No. 76, entered July 25, 2024.
[9] *See id.*; *see also* Complaint ¶¶ 157–58, 191–199, 231–43.
[10] *See* Hearing Minutes.

a state law claim, how the court should exercise its jurisdiction on the remaining state law claims."[11] The parties submitted their briefs on October 15, 2025.[12]

## STANDARD

United States district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."[13] In any civil action where a district court has original jurisdiction based on a federal question, that court also has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."[14] When a court dismisses "all claims over which it has original jurisdiction," it may "decline to exercise supplemental jurisdiction" over the remaining claims.[15] The exercise of supplemental jurisdiction "is not a matter of the litigants' right, but of judicial discretion."[16]

## DISCUSSION

I.  **Sixth Cause of Action – "State Created Danger"**

The parties disagree about whether Count Six in the Complaint sounds in state or federal law. Plaintiffs argue that the context of the claim and its use of federal cases show that it invokes federal law.[17] Defendants respond that the "state created danger" claim is not an independent cause of action and that, if it is, it sounds in state negligence law.[18]

---

[11] *Id.*
[12] Def. Brief; Pl. Brief.
[13] 28 U.S.C.A. § 1331.
[14] 28 U.S.C.A. § 1367(a).
[15] 28 U.S.C.A. § 1367(c).
[16] *Est. of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1165 (10th Cir. 2004).
[17] Pl. Brief 3.
[18] Def. Brief 3–4.

### A.  "Special Relationship" Claims

Count Six includes citations to both state and federal case law related to "special relationships" between governmental actors and individuals.[19] It is important here to distinguish between the application of such a "special relationship" in state and federal law.

#### 1.  Federal Law

"Generally, state actors are liable only for their own acts, and not the violent acts of third parties."[20] Thus, it is usually the case that "a state's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."[21] Two exceptions to this general rule exist.

First, under the special relationship doctrine, the state is liable for an individual's safety if it "assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual."[22] Such a duty is triggered when a state's control restrains an individual's liberty to the point that "it renders him unable to care for himself."[23] The special relationship exception only applies "in the presence of a custodial relationship between the victim and the State," such as "arrest, incarceration, and institutionalization."[24] Furthermore, a violation of this right "requires more than mere negligence: it requires an abdication of such professional responsibility . . . sufficient to shock the conscience."[25]

---

[19] Compl. ¶¶ 228–30.
[20] *Armijo By & Through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1260 (10th Cir. 1998).
[21] *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989).
[22] *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995).
[23] *Gray v. Univ. of Colorado Hosp. Auth.*, 672 F.3d 909, 923 n.10 (10th Cir. 2012) (quoting *DeShaney*, 489 U.S. at 200).
[24] *Id.* at 923.
[25] *J.W. v. Utah*, 647 F.3d 1006, 1011 (10th Cir. 2011) (quoting *Johnson v. Holmes,* 455 F.3d 1133, 1143 (10th Cir.2006).

Second, under the danger creation theory, the state is liable for an individual's safety if it "created the danger that harmed that individual."[26] Only "special" dangers give rise to state liability for third-party harm under this theory.[27] Such dangers exist when the claim is "predicated on reckless or intentionally injury-causing state action which shocks the conscience."[28] For example, the classic case of danger creation giving rise to liability is "*Wood v. Ostrander,* where police officers placed plaintiff in danger by impounding her car and abandoning her in a high crime area at 2:30 a.m."[29] In contrast to the special relationship exception, the danger creation exception only applies "in the *absence of a custodial relationship* between the victim and the State."[30] Thus, the two exceptions apply in mutually exclusive situations.

Based on these exceptions, the state has an affirmative obligation under the Due Process Clause of the Fourteenth Amendment to protect an individual from third-party harm when (1) the state restrains that individual's liberty by taking him into a custodial relationship through "force, the threat of force, or a show of authority"[31] and thereafter abdicates its professional responsibilities sufficient to "shock the conscience,"[32] or (2) the state acts recklessly in a manner which "shocks the conscience" and creates the danger that harms the individual.[33] If an individual is harmed by a third party under such circumstances, that individual may assert a

---

[26] *Uhlrig*, 64 F.3d at 572.
[27] *Id.*
[28] *Id.*
[29] *Id.* (citing *Wood v. Ostrander*, 879 F.2d 583, 589 (9th Cir. 1989)) (emphasis supplied).
[30] *Gray v. Univ. of Colorado Hosp. Auth.*, 672 F.3d 909, 923 (10th Cir. 2012).
[31] *Id.* at 924.
[32] *J.w. v. Utah* 647 F.3d at 1011.
[33] *Uhlrig*, 64 F.3d at 572.

5

constitutional claim against the state under 42 U.S.C. § 1983 for violation of his substantive due process rights.[34]

### 2. State Law

Under Utah law, a special relationship can also give rise to state liability. However, rather than creating a constitutional duty under the Fourteenth Amendment, state-law special relationships create an exception to the public duty doctrine.[35] In Utah, the public duty doctrine states that the government's general duty to the public "does not give rise to a specific duty of care to individuals unless there is some special relationship between the government agency and the individuals that makes it reasonable to impose a duty."[36] In other words, to establish a duty for a negligence claim against the government, a plaintiff must first show the existence of a special relationship.[37]

The Utah Supreme Court has noted "at least four circumstances that can give rise to a special relationship":

> (1) by a statute intended to protect a specific class of persons of which the plaintiff is a member from a particular type of harm; (2) when a government agent undertakes specific action to protect a person or property; (3) by governmental actions that reasonably induce detrimental reliance by a member of the public; and (4) under certain circumstances, when the agency has actual custody of the plaintiff or of a third person who causes harm to the plaintiff.[38]

This Utah formulation of special relationships is broader than the federal version. Under federal law, a special relationship is limited to instances of state custody where an

---

[34] *Id.*
[35] *Francis v. State, Utah Div. of Wildlife Res.*, 2013 UT 65, ¶ 25, 321 P.3d 1089, 1095.
[36] *Id.* (quoting *Day v. State*, 1999 UT 46, ¶ 12, 980 P.2d 1171).
[37] *Id.*
[38] *Id.*

6

individual no longer has the ability to effectively protect him or herself.[39] While a custodial relationship is sufficient to establish a duty under state law, it is not necessary.[40] Other circumstances can also create a special relationship that imposes a duty of care on the state.[41]

        **B.**      **Whether Count Six Was Pled as a State or Federal Claim**

The court now turns to the Sixth Cause of Action to determine whether it was pled as a federal or state law claim. Plaintiffs titled the claim "State Created Danger." But danger creation can only exist under federal law when an individual is *not* in state custody.[42] Here, the cause of action alleges, and the facts support, that Mr. Sivatia was in custody after he was tased and instructed to remain still under the threat of additional force.[43] Therefore, any federal claim would have to arise under the special relationship exception, not danger creation. At the outset, the Sixth Cause of Action does not appear to be a federal claim.

Count Six next turns to a brief recitation of the special relationship and danger creation exceptions.[44] It states that government actors are generally not liable for the violent acts of third parties and then cites federal caselaw for the exceptions.[45] It then launches into an explanation of Utah's state-law application of special relationships, citing *Francis v. State Division of Wildlife Resources*, a state supreme court case.[46] It lists the four circumstances set forth in *Francis* and bolds the entirety of the final two—detrimental reliance and actual custody—as being present in

---

[39] *Gray v. Univ. of Colorado Hosp. Auth.*, 672 F.3d 909, 923 n.10 (10th Cir. 2012).
[40] *See Francis*, 321 P.3d at 1095.
[41] *Id.*
[42] *Gray v. Univ. of Colorado Hosp. Auth.*, 672 F.3d 909, 923 n.10 (10th Cir. 2012).
[43] Compl. ¶¶ 23, 27, 232.
[44] Compl. ¶ 228.
[45] *Id.*
[46] *Id.* ¶¶ 229–30.

this case.[47] The next two paragraphs contain allegations that defendants induced detrimental reliance by Mr. Sivatia and had him in custody.[48] The remainder of the Sixth Cause of Action alleges that Defendants had a duty to protect Mr. Sivatia, that they recklessly breached their duty, that this breach directly and proximately harmed Mr. Sivatia, and that his damages are extensive.[49] In addition to the title Plaintiffs selected for the claim, there are multiple other reasons why this does not appear to be pled as a federal claim.

First, any federal claim relying on the special relationship exception is ultimately alleging a substantive due process violation that creates § 1983 liability.[50] Yet Count Six makes no mention of § 1983, the Fourteenth Amendment, or the Due Process Clause.[51] This omission is especially notable here because Plaintiffs specifically stated that each one of their other federal claims was "Cognizable Under 42 U.S.C. § 1983."[52]

Second, Plaintiffs make allegations relating to state law factors that would be irrelevant to a federal claim. In their brief, Plaintiffs argue that their use of the *Francis* case is simply a "[c]itation to a persuasive state-law opinion addressing a substantially similar issue."[53] But Plaintiffs do more than merely cite the state law standard; they make specific allegations that Mr. Sivatia meets the requirements for a special relationship under state law.[54] While some circumstances overlap with federal law, others, like the detrimental reliance factor, do not. If the Sixth Cause of Action were a federal constitutional claim, the allegations that Mr. Sivatia

---

[47] *Id.*
[48] *Id.* ¶¶ 231–32.
[49] *Id.* ¶¶ 233–43.
[50] *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995).
[51] *See* Compl. ¶¶ 227–43.
[52] *Id.* at 16, 29, 31.
[53] Pl. Brief 5.
[54] Compl. ¶¶ 231–32.

8

detrimentally relied on the officers would be totally irrelevant, as would any discussion of *Francis*.

Third, the Sixth Cause of Action closely follows a negligence framework. It alleges a duty based on a special relationship, a breach of that duty, causation, and damages.[55] This aligns with the elements of a negligence claim in the state of Utah.[56] The Utah special relationship test is inherently related to such negligence claims because it creates an exception to the general rule that a state actor in Utah has no actionable duty toward individuals.[57] Because Count Six makes no mention of § 1983 or any constitutional provision, relies heavily on state law factors that are not relevant to federal claims, and closely follows a typical negligence framework, it appears to be a state law negligence claim rather than a federal constitutional claim.

Fourth, the Sixth Cause of Action does not set forth the elements of a Due Process Clause violation under the Fourteenth Amendment. For example, the cause of action does not allege that West Valley's conduct was "conscience shocking."[58] Indeed, the cause of action, while nominally stated as being against West Valley, contains no specific factual allegations involving the municipality, focusing instead on the actions and inactions of the "Defendant Officers."[59] As counsel for Plaintiffs are aware, municipalities cannot be liable under a *respondeat superior*

---

[55] *See id.* ¶¶ 233–43.
[56] *Hunsaker v. State*, 870 P.2d 893, 897 (Utah 1993) ("To prevail on a negligence claim, a plaintiff must establish four essential elements: (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, (3) that the breach of duty was the proximate cause of the plaintiff's injury, and (4) that the plaintiff in fact suffered injuries or damages.").
[57] *Francis v. State, Utah Div. of Wildlife Res.*, 2013 UT 65, ¶ 25, 321 P.3d 1089, 1095.
[58] *See Gutteridge v. Oklahoma*, 878 F.3d 1233, 1241 (10th Cir. 2018) ("[A] plaintiff must separately demonstrate the conscience-shocking nature of a defendant's conduct in order to mount a successful special-relationship claim.").
[59] Compl. ¶¶ 231–37.

theory.[60] Therefore, Plaintiffs pled a state law claim in their Sixth Cause of Action, not a veiled and facially defective federal constitutional claim.

In addition to the structure and allegations of the Sixth Cause of Action pointing to a state law claim, the record in this case also supports such a conclusion. In its July 25, 2024, Order granting in part Defendants' motion for summary judgment, the court noted that Plaintiffs' "Amended Complaint alleges three claims grounded in Section 1983," the First, Fourth, and Fifth Counts.[61] Later in that Order, the court allowed a state constitutional claim to continue in part because there were no remaining § 1983 claims that would offer an alternative remedy.[62] Thus, for over a year before the October 1, 2025 hearing, Plaintiffs were on notice that the court had granted summary judgment on all of Mr. Sivatia's § 1983 claims. Despite that notice, and even though the absence of any remaining § 1983 claims substantively affected the court's analysis on Plaintiffs' state constitutional claim, Plaintiffs took no action to correct the court's understanding or amend or clarify their Complaint.

For the foregoing reasons, Plaintiffs' Sixth Cause of Action does not plead a § 1983 claim. The question for the court is not whether the claim could have been framed as a federal claim (by stating that it was alleging a violation of the Fourteenth Amendment's Due Process Clause through § 1983 and then identifying and addressing the elements of that claim), but rather whether it actually did so. It did not, and it should have been clear to Plaintiffs that it did not.

---

[60] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).
[61] PMSJ Order 6.
[62] *Id.* at 23 ("Defendants argue that Mr. Sivatia has an adequate remedy under Section 1983. . . . However, each of the decisions Defendants cite allowed a Section 1983 claim to move forward, whereas here the court has granted Defendants' motion for summary judgment on Plaintiffs' Section 1983 claims. Therefore, Plaintiffs do not have an adequate remedy under Section 1983.").

Plaintiffs' brief on this issue does not suggest they were seeking leave to amend on this issue, even though they knew the court would dismiss their case if it found that no federal claim remained and that supplemental jurisdiction should not be exercised. Had they done so, Plaintiffs would have had the burden of showing that they could meet the requirements of both Rules 15(a) and 16(b) more than two years after the deadline for moving to amend the pleadings and nearly four years into the litigation.[63]

In any event, such an amendment would have been futile. The Sixth Cause of Action is against West Valley, a municipality.[64] In *Monell v. Department of Social Services*, the Supreme Court held that municipalities qualify as "person[s]" under § 1983 but clarified that a local government can only be sued under § 1983 for its own policy or custom rather than for its agents' actions.[65] Thus, municipal liability under *Monell* requires a plaintiff to point to a deficiency in an "official policy or custom."[66] Plaintiffs must identify not only the specific deficiency, but also that the policy was the "moving force" that caused the injury in question.[67]

In this case, the parties already addressed West Valley's policies and *Monell* liability in the context of Counts Four and Five.[68] In those causes of action, Plaintiffs asserted municipal liability against West Valley on the grounds that it lacked sufficient policies and failed to properly train its officers about safe detention practices.[69] The court granted summary judgment

---

[63] ECF No. 47 (deadline for motion to amend pleadings was September 22, 2023); s*ee Tesone v. Empire Marketing Strategies*, 942 F.3d 979, 989 (10th Cir. 2019) ("A party seeking leave to amend after a scheduling order deadline must satisfy both the Rule 16(b) and Rule 15(a) standards.").
[64] Compl. at 32.
[65] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).
[66] *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).
[67] *Id.* (citations omitted).
[68] PMSJ 16–19; Opposition to Defendants' Motion for Partial Summary Judgment ("PMSJ Opp'n") 35–39, ECF No. 58, filed Jan. 16, 2024.
[69] Compl. ¶¶ 203–226.

on those claims, finding that Plaintiffs failed to identify any particular deficiency.[70] Indeed, as the court noted in its order, Plaintiffs argued that "no specialized training" was needed and that the risk was known by Officers Fox and Williams "who have been trained about directing and blocking."[71] If the Sixth Cause of Action had been pled as a federal § 1983 claim against West Valley it would also be subject to *Monell*. Accordingly, the claim necessarily would fail.

For these reasons, the Sixth Cause of Action must be a state law claim, and simply treating it as if it were a federal claim would be futile.

## II.  Supplemental Jurisdiction

Having determined that the Sixth Cause of Action sounds in state law, the court must now decide whether it should continue to exercise supplemental jurisdiction over the remaining state-law claims in the absence of a federal question. The parties were asked to brief the court on this issue.[72] Plaintiffs declined to do so.[73] Defendants argued that the court should not exercise supplemental jurisdiction because the Supreme Court has counseled against doing so and the remaining claims present novel issues of state law.[74]

When "all claims over which it has original jurisdiction" have been dismissed, a district court may decline to exercise supplemental jurisdiction over the remaining claims.[75] The Supreme Court has stated that, if "federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."[76] Similarly,

---

[70] PMSJ Order 19.
[71] *Id*. at 17–18 (citing PMSJ Opp'n 1, 29).
[72] Hearing Minutes.
[73] Pl. Brief 2.
[74] Def. Brief 7.
[75] 28 U.S.C.A. § 1367(c).
[76] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

the Tenth Circuit has held that "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."[77] However, while "notions of comity and federalism demand that a state court try its own lawsuits," a district court may exercise its discretion to retain state law claims when, "given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction."[78]

As noted earlier, this case has been pending for almost four years.[79] However, much of that time was consumed by the parties in discovery and motion practice. Since this case was filed in December 2021, the court has granted four stipulated motions allowing Plaintiffs filing extensions,[80] four stipulated motions allowing Defendants filing extensions,[81] and five joint motions to amend scheduling orders for additional time.[82] Plaintiffs also are on their fourth complaint.

But trial is not imminent. No trial date has been requested or set. There are currently pending motions before the court to permit Plaintiffs to file a fourth amended (fifth) complaint[83] and to resolve discovery disputes.[84] If leave were granted to file another amended complaint, the nature of the amendments (new assertions that the defendant officers provided inadequate medical after Mr. Sivatia was struck by a car) likely would require the court to reopen fact and

---

[77] *Smith v. City of Enid By & Through Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998).
[78] *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).
[79] *See* Docket.
[80] *See* ECF Nos. 52, 55, 57, 107.
[81] *See* ECF Nos. 28, 62, 64, 66.
[82] *See* ECF Nos. 45, 47, 78, 83, 87.
[83] Plaintiffs' Motion for Leave to File a Fourth Amended Complaint, ECF No. 100, filed June 18, 2025.
[84] Objection to Magistrate Judge Decision, ECF No. 98, filed June 3, 2025.

expert discovery. It is also predictable that leave then will be sought to move for summary judgment because of the new amendments. In short, the trial of this matter will not occur soon.

There is also no indication that the discovery completed so far would not be usable in a subsequent state action. The work the parties have done and the progress made in this case will not disappear if this matter moves to state court.

In sum, the case has been pending a long time, but that is largely a result of the work that needed to be done coupled with how the parties have litigated the case. The discovery conducted has advanced the case, so the case can proceed from this point to conclusion in state court on the state court claims. No reason has been advanced suggesting or showing that this would take longer, much less materially longer, in state court. And by statute,[85] Plaintiffs would have 30 days from a dismissal here to refile in state court. The court sees no prejudice in dismissing the remaining state claims and no reason why "judicial economy, convenience, and fairness would be served by retaining jurisdiction."[86] Certainly, Plaintiffs have provided none.

Additionally, compelling reasons exist for the court to decline supplemental jurisdiction. The supplemental jurisdiction statute permits courts to decline to exercise supplemental jurisdiction when a claim "raises a novel or complex issue of State law."[87] The Supreme Court has provided similar guidance, stating that "[n]eedless decisions of state law should be avoided both as a matter of comity" and to procure for the parties a "a surer-footed reading of applicable law."[88]

---

[85] 28 U.S.C.A. § 1367(d).
[86] *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).
[87] 28 U.S.C.A. § 1367(c)(1).
[88] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

14

There are three state law claims pending. Multiple potentially novel or complex state law claims are present in Plaintiffs' remaining causes of action. For example, in Count Two, Plaintiffs allege a violation of the Unnecessary Rigor Clause in the Utah Constitution and request punitive damages.[89] However, Defendants contend that punitive damages are categorically unavailable for claims arising under the Utah Constitution.[90] The parties have fully briefed the issue, but the Utah cases they cite do not clearly resolve the question.[91] The court was likewise unable to find any Utah Supreme Court or Court of Appeals cases that directly consider the general applicability of punitive damages to Utah constitutional claims.

Furthermore, the unnecessary rigor claim itself will involve novel questions of state constitutional law. As the Utah Supreme Court has noted, the unnecessary rigor provision in the Utah Constitution has no federal counterpart and few similar state constitutional provisions.[92] As a result, the Utah Supreme Court has had "few opportunities to interpret or apply the unnecessary rigor clause," and little persuasive law from other jurisdictions exists.[93] Given the general dearth of binding Utah caselaw relating to unnecessary rigor claims, including Utah case law on the availability of punitive damages in those claims, the court would be left without much guidance if it chose to exercise supplemental jurisdiction over these claims. The result would be that this court would be making a series of *Erie*[94] predictions, which then would require the Tenth Circuit in any appeal to do the same. While such an approach is sometimes necessary, here it is not.

---

[89] Compl. ¶ 185.
[90] Objection to Magistrate Judge Decision 7.
[91] *See id.*; *see also* Response to Objection to Magistrate Judge Decision, ECF No. 101, filed June 20, 2025.
[92] *Dexter v. Bosko*, 2008 UT 29, ¶ 7, 184 P.3d 592, 595.
[93] *Id.*; The court was also unable to find any guidance on unnecessary rigor claims in Utah's model jury instructions. *See* Model Utah Jury Instructions, 2nd Ed. (MUJI 2d), Civil.
[94] *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Instead, the better approach on this record is to let Utah state courts develop Utah state law instead of leaving a federal court to predict it. This is true both for the obvious federalism and comity considerations, and also because, unlike decisions by the Utah Court of Appeals and the Utah Supreme Court, this court's *Erie* predictions will not bind other litigants, leaving Utah law on these points undeveloped.

In short, there are no more federal claims in this case. The remaining state claims raise some novel issues of state law, and at the very least would require the court to interpret the Utah Constitution in undeveloped areas of law. On this record, the interests of federalism compel the court to defer such interpretations to Utah state courts, who can speak on the matter with greater experience and authority. This is especially true given the lack of demonstrated prejudice, unfairness, or significant delay to the parties if the case were to be refiled in state court. Accordingly, the court declines to continue exercising supplemental jurisdiction over Plaintiffs' remaining claims.

## ORDER

This case is DISMISSED without prejudice.

Signed October 29, 2025.

BY THE COURT

_____

David Barlow
United States District Judge